IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 7:20-cr-00029 |
| v. ) | |
| ) | By: Michael F. Urbanski |
| MICHAEL JEROME PATTERSON, ) | Chief United States District Judge |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter is before the court on defendant Michael Jerome Patterson's motion for bond, ECF No. 28, and his motion for a Franks hearing, ECF No. 39. The government opposes both motions. ECF Nos. 32, 44. Patterson has filed two supplemental motions for bond, ECF Nos. 34 and 35, and a reply in support of his motion for Franks hearing, ECF No. 48. The government and Patterson also have filed sur-replies regarding the motion for a Franks hearing. ECF Nos. 49, 50. For the reasons explained herein, the court will **DENY** both motions.

### I. BACKGROUND

In September of 2016, Patterson was sentenced to 36 months imprisonment for (1) conspiracy to possess with the intent to distribute heroin, as well as possession of a firearm by a convicted felon. Am. J., United States v. Patterson, No. 7:16-cr-00010 (W.D. Va. Sept. 20, 2016), ECF No. 156. Patterson was released from prison and subject to conditions of supervision starting May 9, 2019. Order on Pet. for Warrant at 1, United States v. Patterson, No. 7:16-cr-00010 (W.D. Va. Oct. 24, 2019), ECF No. 226. About three months later, Roanoke Police Department ("RPD") searched a hotel room rented by Patterson and found drug paraphernalia. Id. Patterson was not arrested at that time. Id. As a result of this

interaction, Patterson's probation officer petitioned the court to revoke Patterson's term of supervision. Id. at 1–2. The court issued a warrant for Patterson's arrest. Arrest Warrant, United States v. Patterson, No. 7:16-cr-00010 (W.D. Va. Oct. 24, 2019), ECF No. 227. RPD's Roanoke Valley Regional Drug Unit executed that arrest warrant on November 8, 2019, at the Howard Johnson Hotel in Salem, Virginia. Aff. in Support of Compl., ECF No. 1-1, at 2. As part of the arrest, the RPD used a Confidential Source ("CS") to conduct a controlled purchase of heroin from Patterson. Id. at 3. The CS entered his hotel room, Room 330, while wearing a video camera. Mot. for Franks Hr'g, ECF No. 39, at 2. The video showed Patterson in the room with an unidentified woman. Id. Patterson asked the CS a question and the CS responded that she gave him $60 for drugs, though the video does not show a transaction. Id. The unidentified woman then denied seeing the CS give Patterson the money. Id. The CS subsequently left the hotel room. Id.

RPD Detective Bridges reportedly saw Patterson leave Room 330 and enter the adjoining Room 332. Id. at 3. Fellow RPD Detectives Flippin, Boardwine, and Knicely took positions around the corner from Room 332 so they could arrest Patterson when he returned to Room 330. Id. The officers arrested him as he emerged from Room 332 and Knicely put Patterson on the ground, handcuffed him, and removed the key to Room 330 from Patterson's hand. Id.

Around 1:18 p.m. on November 8, 2019, Knicely applied for a Virginia search warrant for Patterson's hotel room, Room 330. Aff. in Support of Compl., ECF No. 1-1, at 4; Mot. for Franks Hr'g, ECF No. 38, at 3. In his affidavit for the warrant, he stated that the following material facts constituted probable cause:

> Within the past 72 hours a Confidential Source (CS) purchased a quantity of heroin from the target, Michael Jerome Patterson. The Confidential Source was observed by law enforcement meeting with Patterson at the Howard Johnson, 1671 Skyview Rd in room 330. The substance (fine brown powder) purchased by the CS appeared to your Affiant through his training and experience and its packaging to be Heroin. The CS was searched for contraband/currency prior to and following the controlled purchase and was only out of sight upon entering the hotel room where Patterson[] is staying. Your aff[ia]nt believes there are more narcotics and evidence of distribution inside room 330, which is the hotel room to be searched. Patterson also had an outstanding warrant that was confirmed. A few minutes after the deal was completed, Patterson exited 330 and walked directly inside room 332. He was arrested upon exiting the door of 332 a few moments later. Post Miranda, Patterson stated there was a quantity of Meth and Heroin inside room 330.

Search Warrant, ECF No. 39-1, at 4.

Knicely asserted that the items searched would constitute evidence of a crime, that he had personal knowledge of the facts set forth in the affidavit, and he was advised of the facts in the affidavit in whole or in part by another person. Id. He described the information provided to him as follows:

> You[r] affiant has been a member of the Roanoke County Police Department since 2011[.] Your affiant was assigned to patrol until 2017. He is currently assigned to the Roanoke Regional Drug Unit task force. He has conducted several narcotic related investigations over this time span. In 2013 he became certified in clandestine lab evidence retrieval, he has attended several drug related training seminars and classes throughout his career. Det. Dennis is a member of the Roanoke City Police Department. He is current[l]y assigned to the Community Response Team and conducted several drug related investigations. He has also run seve[ra]l condent[i]al informa[n]ts which have conducted controlled purchases.
>
> The Confidential Source is a registered informant with the Roanoke City Police Department. This confidential source has provided information to the Roanoke City Police that has been corroborated by your affiant.

Id. The search warrant was issued at 1:23 p.m. Id. at 5.

Inside Room 330, the RPD officers found what they believed to be 25.1 grams of methamphetamine, 12.4 grams of heroin, 18.8 grams of marijuana, 0.8 grams of crack cocaine, a Heritage Rough Rider .22 caliber revolver, two mobile phones, and the sixty dollars used in the controlled purchase. Aff. in Support of Compl., ECF No. 1-1, at 4; see also Search Warrant, ECF No. 39-1, at 6.

On March 26, 2020, a criminal complaint was filed against Patterson in the instant case based on the controlled substances and firearm found during the search conducted on November 8, 2019. Compl., ECF No. 1. On May 21, 2020, the government indicted Patterson for (1) knowingly and intentionally possessing with the intent to distribute 5 grams or more of methamphetamine, (2) knowingly and intentionally possessing with the intent to distribute a measurable quantity of fentanyl, (3) knowingly possessing a firearm in furtherance of a drug trafficking crime, and (4) knowingly possessing a firearm, a Heritage Rough Rider .22 caliber revolver, having been convicted previously of a crime punishable by imprisonment for a term exceeding one year. Indictment, ECF No. 12.

Patterson is a 38-year old Black man with hypertensive heart disease, high blood pressure, a history of smoking, and obesity. Mot. for Bond, ECF No. 28, at 1. While in pretrial custody at the Roanoke City Jail, Patterson contracted the COVID-19 virus. Second Suppl. Mot. for Bond, ECF No. 35; see also Medical Records, ECF No. 35-1.

## II. PATTERSON'S REQUEST FOR A FRANKS HEARING

### a. Legal Standard

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures and mandates that "no Warrants shall issue, but upon

4

probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. In <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), the Supreme Court held that a defendant may challenge a facially sufficient affidavit supporting a warrant under certain, narrowly defined circumstances. <u>See also</u> <u>United States v. Colkley</u>, 899 F.2d 297, 300 (4th Cir. 1990). In general, there is a strong "presumption of validity with respect to the affidavit supporting the search warrant." <u>Franks</u>, 438 U.S. at 171. "To establish a <u>Franks</u> violation, a defendant must prove that the affiant either intentionally or recklessly made a materially false statement or that the affiant intentionally or recklessly omitted material information from the affidavit." <u>United States v. Wharton</u>, 840 F.3d 163, 168 (4th Cir. 2016).[1] The defendant must demonstrate both intentionality and materiality by a preponderance of the evidence. <u>United States v. Lull</u>, 824 F.3d 109, 115 (4th Cir. 2016). "A showing that the officer acted negligently, or that the omission was merely an innocent mistake, is insufficient to warrant suppression." <u>Id.</u> A false statement or omission is material if it is necessary to the finding of probable cause or, in other words, if its correction or inclusion would defeat probable cause. <u>Wharton</u>, 840 F.3d at 168–69 (citing <u>Franks</u>, 438 U.S. at 156; <u>Colkley</u>, 899 F.2d at 301).

An alleged <u>Franks</u> violation cannot move forward on allegations alone. To obtain a <u>Franks</u> hearing, "a defendant must make a substantial preliminary showing that (1) law enforcement made a false statement [or omission]; (2) the false statement [or omission] was made knowingly and intentionally, or with reckless disregard for the truth; and (3) the false statement [or omission] was necessary to the finding of probable cause." <u>United States v.</u>

---

[1] <u>Franks</u> concerned only false statements, <u>see</u> 438 U.S. at 171, but the Fourth Circuit has extended this rule to include material omissions. <u>Colkley</u>, 899 F.2d at 300. Franklin claims that affiant made materially false statements as well as material omissions.

5

Moody, 931 F.3d 366, 370 (4th Cir. 2019); see also United States v. Campbell, --- F. App'x ---, No. 19-4298, 2020 WL 1235797, at *2 (4th Cir. Apr. 2, 2021); Colkley, 899 F.2d at 300 (quoting Franks, 438 U.S. at 155–56). This showing "'must be more than conclusory' and must be accompanied by a detailed offer of proof." Colkley, 899 F.2d at 300 (quoting Franks, 438 U.S. at 171). "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." Franks, 438 U.S. at 171. A defendant's burden increases when relying on an omission because an affidavit "cannot be expected to include…every piece of information gathered in the course of an investigation" and, accordingly, always involves "a deliberate process of omitting pieces of information." United States v. Tate, 524 F.3d 449, 454–55 (4th Cir. 2008) (quoting Colkley, 899 F.3d at 300). These types of "intentional omissions do not satisfy the requirement of Franks." Tate, 524 F.3d at 455. And still, "if, when material that is the subject of alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Franks, 438 U.S. at 171–72.

If a hearing is appropriate and the defendant establishes a Franks violation, "the warrant 'must be voided' and evidence or testimony gathered pursuant to it must be excluded," without consideration of the good-faith exception to the exclusionary rule. Colkley, 899 F.2d at 300 (quoting Franks, 438 U.S. at 156).

    b. Analysis

In this case, Patterson alleges that the affiant makes several material and intentional false statements or omissions in support of the search warrant. In particular, Patterson alleges that the affidavit:

- falsely states that Patterson said there was a quantity of methamphetamine and heroin inside Room 330 when he made no such statement,

- falsely states the CS was not out of law enforcement's sight until she entered the hotel room while omitting that the CS was out of sight while walking alone toward an elevator and while alone in the elevator,

- omits that a third person was in the room during the controlled buy, and

- omits that Room 330 adjoined another room to which an interior door was open during the visit.

Mot. for Franks Hr'g, ECF No. 39, at 5–7. Patterson argues that these allegedly false statements and omissions incorrectly "gave the impression" that the CS only had contact with Patterson while in the hotel room and therefore could only purchase heroin from him, which was a misleading and erroneous conclusion supporting the issuance of the warrant. Id. at 6. Patterson alleges in his motion that the CS did not purchase drugs from him. Id.

Patterson also generally critiques the affidavit's representation of the CS. He argues that the affidavit says that the CS is a registered informant without explaining what that means, giving the term a false sense of credibility when, in fact, the CS had recently been arrested for theft, a crime of dishonesty. Id. Patterson notes that the affidavit fails to specify (1) how often the CS had provided information, (2) the recency of that information, (3) how often the information turned out to be true, (4) whether the information led to arrests and convictions, (5) whether the CS was paid for her work with law enforcement, (6) whether the CS was addicted to drugs, and (7) how the affiant corroborated the prior information given by the CS to the RPD. Id. at 7.

All of Patterson's allegations—considered individually and in their totality—fail to satisfy the standard to receive a Franks hearing. First, Patterson offers no support for his

7

assertion that the affidavit falsely states that Patterson said, at the time of his arrest, that there was a quantity of methamphetamine and heroin inside Room 330. Franks clearly states that the allegation "must be more than conclusory," but a conclusory allegation is all that Patterson offers. Franks, 438 U.S. at 171; see also United States v. Chandia, 514 F.3d 365, 373 (4th Cir. 2008) ("bare allegations" were insufficient for "substantial preliminary showing" required by Franks). In reply, Patterson argues that the prosecutors require a promise that he testify in violation of his Fifth Amendment rights, but this unfairly characterizes the government's simple argument that Patterson must put forward some kind of proffer to support his motion for a Franks hearing. Moreover, as the government notes in its sur-reply, "while the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a [defendant-witness] declines to answer questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production." United States v. Rylander, 460 U.S. 752, 758 (1983).

During oral argument, Patterson requested leave to file an affidavit supporting his claim that he did not state that methamphetamine and heroin were inside the room. While amenable to this request, the court finds that such an affidavit would not salvage Patterson's motion. Though it would provide a substantial preliminary showing that (1) law enforcement made a false statement, and (2) the false statement was with reckless disregard for the truth, but the court finds that even this affidavit would not defeat probable cause given the controlled purchase preceding the arrest and search. District courts in the circuit have previously found that such a controlled purchase, surveilled and recorded by law enforcement, provides sufficient probable cause to support the issuance of a search warrant.

8

See, e.g., United States v. Lowery, No. 4:15-cr-00714-RBH, 2016 WL 4527174, at *2 (D.S.C. Aug. 30, 2016); see also United States v. Williams, 974 F.2d 480, 481–82 (4th Cir. 1992) (affidavit submitted to magistrate contained sufficient facts to establish that the defendant was a drug dealer and drug paraphernalia likely would be found in his hotel room). The court is similarly convinced here that the surveilled and recorded controlled purchase, alone, is sufficient for probable cause.

To be sure, Patterson also attacks the controlled purchase, but the court finds each of these attacks unconvincing. It is true that the affidavit erroneously states the CS was not out of law enforcement's sight until she entered the hotel room, and it omits that she was actually out of sight while walking alone toward the elevator and while in the elevator.[2] But Patterson does not and cannot explain how this is material. At most, Patterson asks why the affiant would make such a statement. Reply in Support of Mot. for Franks Hr'g, ECF No. 48, at 5. Without any substantial showing that the statement was knowingly, intentionally, or recklessly included in the affidavit, the court presumes this error was, at most, negligent. Moreover, the court agrees with the government that repairing the affidavit to say that CS was never out of sight except while approaching and inside the elevator does nothing to disturb the magistrate judge's finding of probable cause that a crime was committed in the room based on the other assertions in the affidavit. Mem. in Opp'n, ECF No. 44, at 8.

The court also agrees that the affidavit omits the presence of a third person in the room at the time of the controlled buy. Here, too, Patterson does not offer any kind of preliminary showing that these statements were knowingly, intentionally, or recklessly made.

---

[2] While it is true that the informant was briefly out of view of law enforcement, she wore a body camera which revealed her location and conduct.

Patterson merely asks why this information was omitted and implies that the drugs from the controlled buy may have been purchased from this third person. This sort of unsupported insinuation is unpersuasive and insufficient under Franks and its progeny. At most, the omission was negligent. But Patterson also fails to show why the presence of a third person is material in the absence of any proffer of evidence that someone else sold the CS drugs rather than Patterson. The presence of another person in the room and Patterson's unsupported insinuation do not disturb the magistrate's finding of probable cause.

Next, Patterson alleges that the affidavit omits that Room 330 adjoined another room to which an interior door was open during the visit. Patterson again fails to make any preliminary showing that this omission, if indeed an omission, was knowingly, intentionally, or recklessly made. As the government notes, it is not clear from Patterson's video exhibits that the interior door between the two rooms is open. Mem. in Opp'n, ECF No. 44, at 10. Patterson's own movements, as described in his motion, refute the idea that the interior door was open since Patterson went outside to get to the adjoining room and was then arrested outside when going back to Room 330. Id. Even if the door were open, that does not diminish probable cause given Patterson's admission that drugs were in Room 330.

Patterson takes issues with the "inevitable and erroneous" conclusion to which these various misrepresentations lead: Patterson sold the CS drugs. Mot. for Franks Hr'g, ECF No. 39, at 6. Here, again, Patterson's allegations are conclusory. He proffers nothing to support the idea that Detective Knicely intentionally, knowingly, or recklessly stated or insinuated that the CS purchased drugs from Patterson when she actually purchased them from someone else. To the contrary, (1) the CS went into the room with sixty dollars and no

10

drugs, (2) she left with no money and a small quantity of suspected heroin, (3) Patterson allegedly told the police officers that methamphetamine and heroin were inside the hotel room to which he had a key at the time he was arrested, and (4) the CS told the officers that she purchased the drugs from Patterson.

Patterson also takes issue with the credibility of the CS, but the court finds the affidavit's representation of her to be sufficient. The affiant says he has personally corroborated information provided by the CS. That is the only affirmative representation he makes regarding her credibility. Patterson does not directly contradict this representation but takes issue with omitted information about the CS's background and possible motives. To be sure, an informant's background is meaningful in evaluating probable cause. See Lull, 824 F.3d at 117 ("The trustworthiness of the confidential informant lies at the heart of the reliability determination[.]"); United States v. Anderson, No. 7:19-CR-00027, 2020 WL 249479, at *9 (W.D. Va. Jan. 16, 2020) ("[A] judicial officer's assessment of probable cause based upon the totality of the circumstances must include a review of 'the veracity and basis of knowledge of persons supplying hearsay information.'") (quoting United States v. Perez, 393 F.3d 457, 461–62 (4th Cir. 2004)). At the same time, Patterson offers no evidence that the affiant intentionally, knowingly, or recklessly omitted a relevant part of the CS's criminal history or possible ulterior motives. Rather, he generally alleges she is untrustworthy. But the affidavit does not represent the CS as anything more than a registered informant who had provided evidence which the affiant himself had corroborated. This representation, unlike those in Lull and Anderson, was fair and sufficient. See United States v. Haas, 986 F.3d 467,

11

Case 7:20-cr-00029-MFU   Document 70   Filed 06/08/21   Page 12 of 16   Pageid#: 351

474–75 (4th Cir. 2021) (finding <u>Franks</u> hearing not warranted when informant's criminal history and prior informant work outcomes were omitted from search warrant affidavit).

At oral argument, Patterson conceded that no single allegation defeats probable cause, but he argued that the totality of the circumstances show that a <u>Franks</u> hearing is needed. The court disagrees. Even when considered together, the sum of Patterson's various arguments do not amount to a "substantial preliminary showing that (1) law enforcement made a false statement [or omission]; (2) the false statement [or omission] was made knowingly and intentionally, or with reckless disregard for the truth; and (3) the false statement [or omission] was necessary to the finding of probable cause." <u>Moody</u>, 931 F.3d at 370. Each of Patterson's arguments fails to satisfy at least one of these prongs, and most of them fail to satisfy two or all three. The court simply is not convinced that, in this case, the whole is greater than the sum of its parts.

## III. PATTERSON'S REQUEST FOR BOND

### a. Legal Standard

Patterson argues that his health conditions, prior COVID-19 infection, and his inability to protect himself from COVID-19 while incarcerated present changes in circumstance relevant to his pretrial detention. Mot. for Bond, ECF No. 29; Second Suppl. Mot. for Bond, ECF No. 35.

"Ordinarily, a defendant should not be detained pending trial." <u>United States v. Lee</u>, No. 19-159, 2020 WL 1974881, at *3 (D. Md. Apr. 24, 2020); see also <u>United States v. Salerno</u>, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). Under the Bail Reform Act, 18

U.S.C. § 3141 et seq., if the court determines, following a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). The court must find that the defendant is either a flight risk or a danger to the community, though it need not find both. See Salerno, 481 U.S. at 754–55. "But, the burden of proof differs: the government must establish that a defendant is a flight risk by a preponderance of the evidence, whereas the defendant's danger to the community must be proven by clear and convincing evidence." Lee, 2020 WL 1974881, at *3 (citing United States v. Stewart, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam)).

In conducting its original detention analysis, the court must "take into account the available information concerning" the factors laid out in 18 U.S.C. § 3142(g). Those factors include the following:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing,

13

> appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....

Id. If detention is ordered, a judicial officer can release the defendant if he or she "finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue...." 18 U.S.C. § 3142(f). A judicial officer may also temporarily release detainees "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

During the pandemic, the Fourth Circuit instructs that § 3142(i) requires consideration of the:

> severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release....

United States v. Creek, 457 F. Supp. 3d 473, 474 (D. Md. 2020) (citing Fourth Circuit's order of remand); see also United States v. Chase, CR JKB-19-0473, 2020 WL 2319132, at *3 (D. Md. May 11, 2020). Specifically, the court must consider:

> (1) the original grounds for detention; (2) the specificity of a defendant's COVID-19 concerns; (3) the extent to which the proposed release plan is designed to mitigate or exacerbate other COVID-19 risks to the defendant; and, (4) the likelihood that a defendant's release would increase the COVID-19 risks to others.

Chase, 2020 WL 2319132, at *3 (citing United States v. Green, 1:19-CR-00539-CCB-1, 2020 WL 1873967, at *3 (D. Md. Apr. 15, 2020)).

### b. Analysis

14

Here, Patterson moves for pretrial release under 18 U.S.C. § 3142(i), alleging that he has been in custody for over a year and the delays and risks to his health caused by pretrial incarceration during the COVID-19 pandemic constitute "another compelling reason" for temporary release. See generally Mots. for Bond, ECF Nos. 28, 34, 35.

The magistrate judge found "[b]y clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community," based on his criminal history and the fact that the current offense conduct occurred while on supervised release for similar charges. Order of Detention, ECF No. 8, at 2–3. While Patterson's prior and current charges are non-violent, both involved mixing drugs and firearms. Id. at 3. Given these factors, the magistrate judge found that Patterson's plan to live in Maryland with his girlfriend was insufficient to keep the community safe, outweighing the risks posed to Patterson by COVID-19. Id.

On the other hand, all of Patterson's health conditions—his hypertensive heart disease, high blood pressure, history of smoking, and obesity—can place him at an increased risk of severe infection should he contract the COVID-19 virus.[3] But Patterson has already contracted the virus once in September of 2020. Second Suppl. Mot. for Bond, ECF No. 35. Presumably, Patterson has recovered from his infection and, thankfully, reinfections of COVID-19 remain rare.[4] Patterson now requests to live with his sister in Rocky Mount, Virginia, on home detention and with location monitoring while he awaits trial. Mot. for Bond, ECF No. 29, at 2, 11–12. Given COVID-19 restrictions, Patterson says he "will not

---

[3] Ctrs. for Disease Control and Prevention, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 13, 2021).
[4] Ctrs. for Disease Control and Prevention, Reinfection with COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (updated Oct. 27, 2020).

15

need to travel from his sister's home." Id. at 11. Patterson would present little risk to himself and others should he remain in his sister's home, but the court questions whether he will do so given his prior conduct on supervised release.

Overall, the court finds that "severity of the risk that the COVID-19 virus poses to [Patterson], given his existing medical conditions and the current COVID-19 situation at [the Roanoke City Jail]," does not "rise[] to the level of a 'compelling reason' for temporary release" when "balanced against the other Bail Reform Act factors." Creek, 457 F. Supp. 3d at 474. Accordingly, temporarily release under 18 U.S.C. § 3142(i) is inappropriate.

## IV. CONCLUSION

For these reasons, the court **DENIES** Patterson's motions for bond, ECF Nos. 28, 34, and 35, and his motion for a Franks hearing, ECF No. 39.

An appropriate order will be entered.

Entered: June 7, 2021

Michael F. Urbanski
Chief United States District Judge